Robert R. Ahdoot (CSB 172098)
*rahdoot@ahdootwolfson.com*
Tina Wolfson (CSB 174806)
*twolfson@ahdootwolfson.com*
Theodore W. Maya (CSB 223242)
*tmaya@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111; Fax: (310) 474-8585

Jeffrey D. Kaliel (CSB 238293)
*jkaliel@kalielpllc.com*
Sophia Gold (CSB 307971)
*sgold@kalielpllc.com*
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 450-4783

*Attorneys for Plaintiff Petra Lopez
and the Putative Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETRA LOPEZ, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>CITIBANK, N.A.,<br><br>                              Defendant. | Case No. 2:18-cv-00291-JAM-AC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br><u>Hearing date, time and location</u>:<br><br>Date:    September 18, 2018<br>Time:   1:30 p.m.<br>Ctrm.:  6 |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ........................................... 2

III. ARGUMENT ..................................................................................................... 3

    A.   The Arbitration Clause Improperly Deprives Consumers of the  Right to Seek Public Injunctive Relief in Any Forum and is Therefore Unenforceable Under *McGill* ...................... 3

        1.   Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief 3

        2.   The Waiver at Issue in This Case Is Barred by *McGill* ................................. 4

        3.   Plaintiff Seeks "Public Injunctive Relief" Under the UCL ........................... 6

        4.   *McGill* Is Not Preempted By The FAA ......................................................... 8

    B.   Plaintiff Has Article III Standing To Pursue A UCL Claim ............................... 10

    C.   Plaintiff's UCL Claims For Injunctive Relief Are Not Preempted ..................... 13

    D.   There Is No Basis To Stay This Case Because It Is Properly Before The Court ............... 17

IV. CONCLUSION ................................................................................................. 17

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                              **Page**

3   *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013)..........................................................10

4   *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011)................................................................8, 9

5   *Black v. Fin Freedom Senior Funding Corp.*, 92 Cal. App. 4th 917 (2001)..................................16

6   *Blair v. Rent-A-Ctr., Inc.,* No. C 17-02335 WHA, 2017 WL 4805577

7        (N.D. Cal. Oct. 25, 2017).....................................................................................................5

8   *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999)........................................................6

9   *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)............................................................12

10  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2103) ...............................................................12

11  *Cruz v. PacifiCare HealthSys., Inc.*, 30 Cal. 4th 303 (2003) ....................................................6

12  *Davidson v. Kimberly Clark*, 889 F.3d 956 (9th Cir. 2018)......................................................12

13  *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073 (C.D. Cal. 2009) ...........................13, 14

14  *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013).......................................10

15  *Friends of the Earth, Inc. v. Laidlaw Envt. (TOC) Inc.*, 528 U.S. 167 (2000)..............................11

16  *Gibson v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002) ........................................16

17  *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012) ....................................15, 17

18  *In re Tobacco II Cases*, 46 Cal. 4th 298, 316 (2009)..............................................................6

19  *Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Sup. Ct.*, 133 Cal. App. 4th 396 (2005).....................6

20  *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014) ....................................9

21  *Jefferson v. Chase Home Fin.*, No. 06-6510 TEH, 2008 WL 1883484

22        (N.D. Cal. Apr. 29, 2008)...................................................................................................14

23  *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018)......................................................16

24  *Mann v. TD Bank, N.A.*, No. 09-1062 RBK/AM, 2009 WL 3818128

25        (D.N.J. Nov. 12, 2009)..................................................................................................15, 16

26  *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549 (9th Cir. 2010) ...............................13

27  *McArdle v. AT&T Mobility LLC,* No. 09-CV-01117-CW, 2017 WL 4354998

28        (N.D. Cal. Oct. 2, 2017)....................................................................................................5, 8

    *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) .............................................................*passim*

*Montgomery v. Bank of Am. Corp.*, 515 F.Supp.2d 1106 (C.D. Cal. 2007)....................................15

*People ex rel. Sepulveda v. Highland Fed. Sav &* Loan, 14 Cal. App. 4th 1692 (1993).................17

*Prima Paint v. Flood & Conklin*, 338 U.S. 395 (1967) .......................................................................9

*Rent-A-Center West, Inc. v. Jackson* (2010) 561 U.S. 63, 68..............................................................4

*Reyes v. Premier Home Funding, Inc.*, 640 F. Supp. 2d 1147 (N.D. Cal. 2009)............................16

*Roberts v. AT&T Mobility LLC,* No. 15-CV-03418-EMC, 2018 WL 1317346

      (N.D. Cal. Mar. 14, 2018) .................................................................................................. 10, 13

*Robinson v. Bank of Am., N.A.*, 525 F. App'x 580 (9th Cir. 2013)..................................................15

*Rose v. Chase Bank USA, N.A.,* 513 F.3d 1032(9th Cir. 2008) .......................................................15

*Sakkab v. Luxxotica Retail N. Am, Inc.*, 803 F. 3d 425 (9th Cir. 2015) ...........................................9

*Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005) ..................................................16

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .......................................................................12

*Wash. Mut. Bank, FA v. Super. Ct. (Brown)*, 75 Cal. App. 4th 773 (1999) ....................................17

*Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007) .......................................................................13

*White v. Wachovia Bank, N.A.*, 563 F.Supp.2d 1358 (N.D. Ga. 2008)............................................16

**STATUTES**

12 C.F.R. § 545.2......................................................................................................................17

12 C.F.R. § 7.4007(a).............................................................................................................14

12 C.F.R. § 7.4008(d)(2)(viii)................................................................................................14

9 U.S.C. § 2..................................................................................................................................4

Bus. & Prof. Code § 17203......................................................................................................11

Bus. & Prof. Code § 17204......................................................................................................11

Cal. Bus. & Prof. Code § 17200 ...............................................................................................3

Cal. Civ. Code § 1760 .............................................................................................................10

Cal. Civ. Code § 3513 ....................................................................................................3, 4, 9, 10

1  I.      **INTRODUCTION**

2          Plaintiff Petra Lopez ("Plaintiff") challenges Defendant Citibank N.A.'s ("Defendant" or

3  "Citibank") routine practice of charging consumers more than $12/month for basic checking

4  account services, in direct contravention to its marketing representations. Plaintiff alleges that,

5  despite Defendant's representation that it would not charge her more than $12/month for her

6  Citibank checking account, Defendant nevertheless charged Plaintiff $46 for a month of checking

7  account services. This massive price increase occurs when, on accounts like Plaintiff's that have

8  insufficient funds at a certain point in the month to pay the monthly checking account fee, Citibank

9  assesses $34 overdraft fees *on its own checking account service charges*. Such overdraft fees are an

10  additional, intrinsic charge for the monthly checking account services in disguise. Plaintiff alleges

11  there is no justification for such fees, other than to maximize Citibank's profit. Defendant now

12  seeks to compel arbitration. Defendant's motion should be denied.

13         Defendant's arbitration clause purports to waive the right to seek pubic injunctive relief in

14  all forums. As such, it is unenforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)

15  ("*McGill*"). Citibank concedes its provision expressly bars Plaintiff from seeking public injunctive

16  relief in any forum. Nonetheless, Citibank argues its arbitration provision is still enforceable

17  because the injunctive relief Plaintiff seeks is purportedly "not for the general public," because the

18  *McGill* rule is supposedly preempted under federal law, and because Plaintiff Lopez allegedly does

19  not have standing to pursue her claims because she closed her account. Citibank's arguments are not

20  persuasive.

21         ***First***, the Complaint makes it clear that the relief Plaintiff seeks is on behalf of the general

22  public—including current Citibank accountholders who have incurred the relevant fees due to

23  misleading and deceptive representations, current Citibank accountholders who will incur the fees

24  due to those same misrepresentations, and California consumers who may in the future decide to

25  bank with Citibank based on the deceptive advertising marketed to and consumed by the California

26  public.

27         ***Second***, *McGill* is not preempted by the Federal Arbitration Act ("FAA"). *McGill* neither

28  disfavors arbitration, nor interferes with the fundamental attributes of arbitration. Abundant case

1  law exists that the California Supreme Court's decision in *McGill* falls squarely within United

2  States Supreme Court and Ninth Circuit precedent.

3      ***Finally***, Plaintiff has Article III standing to pursue her claims under California's Unfair

4  Competition Law ("UCL"), even though she closed her account at Citibank. That she may be unable

5  to rely on Defendant's representations moving forward is "actual and imminent threat" sufficient for

6  purposes of Article III standing and, in any event, this Court must determine arbitrability here.

7      Plaintiff respectfully requests that the Court deny Defendant's motion.

8  **II.      <u>PROCEDURAL AND FACTUAL BACKGROUND</u>**

9      Plaintiff filed this action on February 7, 2018. (Dkt. 1, "Compl."). Defendant then filed its

10 Motion to Compel Arbitration (Dkt. 5, hereinafter, "Def.'s Mot.") on April 17, 2018.

11     As set forth in the Complaint, Defendant markets its checking account services to consumers

12 with both in-branch marketing representations and online advertisements. (Compl. ¶ 23.) In both,

13 Defendant expressly tells consumers that the bank will charge no more than $12/month for basic

14 checking account services. (*Id*. ¶ 26.) Defendant provides consumers its fee schedule, which plainly

15 states that the monthly checking account service fee for a basic checking account will be a

16 *maximum* of $12, and can also be $0 if certain conditions are met. (*Id*.)

17     While Defendant prominently informs consumers of the circumstances in which its regular

18 checking account can cost less than $12/month, Defendant never informs consumers that it will

19 sometimes charge consumers much more than the $12/month for basic checking account services.

20 *Id*. Defendant's practice is therefore deceiving to consumers and is in direct violation of

21 Defendant's promises and representations.

22     Citibank misrepresents its checking account cost by failing to inform consumers that in

23 addition to its maintenance fee, Citibank will also charge consumers $34 overdraft fees *on its own*

24 *checking account service charges*. (*Id*. ¶ 3.) Such overdraft fees are an additional, intrinsic charge

25 for the monthly checking account services in disguise, since the Citibank provides no other service

26 in exchange for the overdraft fee, other than the provision of the checking account services that

27 were marketed at $12/month. (*Id*. ¶ 4.)

28

1    Plaintiff alleges she fell victim to such practice after she was charged $46 for a month of

2   checking account services, despite Citibank's representation that the checking account would carry

3   a maximum monthly fee of $12. (*Id.* ¶¶ 30-33.)  Had Citibank disclosed to Plaintiff that Citibank

4   would charge up to $46/month for checking account services, instead of the $12/month promised,

5   Plaintiff would not have signed up for such services. (*Id.* ¶ 33.)

6    Plaintiff requests declaratory relief and relief for violations of the fraudulent, unfair and

7   unlawful prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. (*Id.* ¶¶

8   45-59.) Plaintiff sues on behalf of herself and on behalf of a proposed class of Citibank checking

9   accountholders in California who, within the applicable statute of limitations, were charged

10  overdraft fees on monthly checking account service fees. (*Id.* at ¶ 34.)

11  **III.    ARGUMENT**

12          **A.    The Arbitration Clause Improperly Deprives Consumers of the
                    Right to Seek Public Injunctive Relief in Any Forum and is Therefore**
13                  **Unenforceable Under *McGill***

14                  **1.    Background: *McGill* Prohibits Waivers of the Right to Seek Public
                            Injunctive Relief**
15

16    In *McGill*, the Supreme Court of California unanimously held that a contract provision

17  purporting to prevent a consumer from seeking public injunctive relief in any forum is

18  unenforceable. *McGill*, 2 Cal 5th at 952. "Public injunctive relief" is relief that "has the primary

19  purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.*

20  at 951. The issue before the court was whether the arbitration provision in question "is valid and

21  enforceable insofar as it purports to waive [plaintiff's] right to seek public injunctive relief *in any*

22  *forum.*" *Id.* at 956 (emphasis in original). After finding that the complaint did, in fact, seek public

23  injunctive relief, and that such relief was available under the CLRA, UCL, and FAL, the court

24  concluded that the "arbitration provision here at issue is invalid and unenforceable under state law

25  insofar as it purports to waive [plaintiff]'s statutory right to seek such relief." *Id.* at 958-61.

26    To reach this result, the court relied on Civil Code § 3513, which provides that "a law

27  established for a public reason cannot be contravened by private agreement." *Id.* at 961. The court

28  explained that because the relief available under the UCL, the CLRA, and the FAL is "primarily for

1    the benefit of the general public," any waiver of the right to seek public injunctive relief under those

2    statutes "would seriously compromise the public purposes the statutes were intended to serve." *Id.*

3    Accordingly, the waiver was deemed invalid. *Id.*

4         The court also rejected the movant's Federal Arbitration Act preemption argument. Under

5    the FAA, arbitration agreements, like other contracts, "may be invalidated by 'generally applicable

6    contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 962 (quoting *Rent-A-Center*

7    *West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)); *see also* 9 U.S.C. § 2 (stating that written arbitration

8    agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation

9    of any contract"). Since the contract defense asserted by the plaintiff—that a law established for a

10   public reason cannot be contravened by private agreement, *see* Civ. Code § 3513—was a generally

11   applicable basis for revocation of a contract, it fell within the FAA's savings clause. *See McGill*, 2

12   Cal.5th at 961-66; *accord* 9 U.S.C. § 2. Accordingly, under *McGill*, "a provision in any contract—

13   even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory

14   right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is

15   invalid and unenforceable under California law." *McGill*, 2 Cal.5th at 962.

16                    **2.    The Waiver at Issue in This Case Is Barred by *McGill***

17        The holding in *McGill* is directly applicable to the instant case. Like in *McGill*, the

18   Complaint seeks a public injunction under the UCL. (*See* Compl. at ¶ 10 ("Plaintiff seeks an

19   injunction on behalf of the general public to prevent Citibank from continuing to engage in its

20   illegal and deceptive practices."); ¶ 52 ("Plaintiff seeks class-wide restitution and a public

21   injunction under the UCL, which would prohibit Defendant from charging the excessive and unjust

22   fees alleged herein, throughout California"); ¶ 59 (same); p. 11 (In the Prayer for Relief section,

23   requesting "public injunctive relief, including to ensure compliance with the UCL"). And like in

24   *McGill*, the arbitration clause improperly bars public injunctive relief in any forum. It accomplishes

25   this by requiring arbitration of all claims, while at the same time barring the arbitrator from

26   awarding public injunctive relief. Plaintiff's Account Agreement provides:

27        **Agreement to Arbitrate Disputes**: Either you or we may elect, without the
          other's consent, to require that any dispute between us, or concerning your

28

Citibank deposit account(s), except those disputes specifically excluded below, be resolved by binding arbitration;

**Disputes Covered by Arbitration**: Any claim or dispute relating to or arising out of your deposit account(s), this Agreement, or our relationship will be subject to arbitration. *All disputes are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek…*;

**Administration of Arbitration**: *An award in arbitration shall determine the rights and obligations between the named parties only*, and only in respect of the claims in arbitration, and shall not have any bearing on the rights of any other person, or on the resolution of any other dispute."

(Italics added).

The language Citibank uses is nearly identical to the language used in *McGill*. Because a consumer could not ask any court or arbitrator to enjoin Citibank from continuing to engage in these unfair business practices, this provision is unenforceable under *McGill*. The prohibition on bringing "all disputes" to court, combined with the ban on seeking injunctive relief on behalf of the public in arbitration, has the effect of eliminating a consumer's ability to seek injunctive relief under the UCL that has "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," either in arbitration or in court. Thus, "it is invalid and unenforceable under California law." *McGill*, 2 Cal. 5th at 961.

Since *McGill*, several courts in the Ninth Circuit have struck down similar arbitration clauses to the one at issue here for failing to allow any forum for Plaintiff to seek public injunctive relief. For example, in *McArdle v. AT&T Mobility LLC*, No. 09-CV-01117-CW, 2017 WL 4354998, at *5 (N.D. Cal. Oct. 2, 2017), the Court granted Plaintiff's Motion for Reconsideration, finding the parties' agreement to arbitrate all claims, including claims for public injunctive relief under the UCL, was unenforceable under *McGill*. *Id; see also Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *6 (N.D. Cal. Oct. 25, 2017) (holding *McGill* rendered arbitration clause unenforceable with respect to plaintiff's UCL claim). Like in *McArdle* and *Blair*, this Court should find Citibank's arbitration provision—which includes a waiver of the right to seek public injunctive relief—to be unenforceable.

1          **3.      Plaintiff Seeks "Public Injunctive Relief" Under the UCL**

2          Citibank does not argue its arbitration provision is enforceable despite *McGill*. Instead,

3  Citibank argues Plaintiff is unable to avail herself of *McGill* because the relief Plaintiff seeks is not

4  "public injunctive relief" because "Plaintiff seeks relief on behalf of Citibank customers rather than

5  the general public." (Def.'s Mot. at 13.)

6          In *McGill*, the California Supreme Court re-affirmed its prior broad construction of public

7  injunctive relief as any relief having the "primary purpose and effect of prohibiting unlawful acts

8  that threaten future injury to the general public." 2 Cal. 5th at 955. In particular, the Court

9  reaffirmed its interpretation of what constitutes "public injunctive relief" as set forth in *Broughton*

10  *v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999) and *Cruz v. PacifiCare HealthSys., Inc.*, 30 Cal. 4th

11  303 (2003), together the "*Broughton-Cruz*" rule.

12         In *Broughton*, the Court explained that an injunction under the CLRA against a defendant's

13  deceptive methods, acts, and practices, "generally benefit[s]" the public, rather than the plaintiff,

14  "directly by the elimination of deceptive practices," because the plaintiff has "already been injured,

15  allegedly, by such practices and [is] aware of them." 21 Cal.4th at 1081. The Court further

16  explained that the benefits of injunctive relief under the CLRA by and large accrue not to the party

17  requesting relief but, rather, to the general public. *Id.*

18         Thereafter, the California Supreme Court expanded the reasoning of *Broughton* to UCL and

19  FAL claims. *Cruz*, 30 Cal. 4th at 316. In *Cruz,* the Court explained that an injunction under the

20  UCL "is clearly for the benefit of … the general public" as "it is designed to prevent further harm to

21  the public at large rather than to redress or prevent injury to a plaintiff." *Id.* at 315-316.  Indeed, the

22  UCL, FAL, and CLRA expressly provides for representative actions that indisputably are intended

23  to benefit the public. *See, e.g., Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Sup. Ct.*, 133 Cal. App.

24  4th 396, 416 (2005) (claims under the UCL "affect the public interest"); *see also In re Tobacco II*

25  *Cases*, 46 Cal. 4th 298, 316 (2009) (the creation of a "public benefit" is one of the goals of the UCL

26  (citing Prop. 64, § 1 subd. (b)(1)-(4)).

27         In *McGill*, the Court rejected defendant's argument that plaintiff failed to adequately specify

28  "the actual nature of the injunctive relief" plaintiff seeks or to "explain how the public at large

would benefit from" that relief. 2 Cal. 5th at 957. There, the plaintiff alleged in part that defendant's "advertising and marketing of" [services] "is unfair, deceptive, untrue and misleading" and that [defendant] continue[s] to violate the UCL by selling [its service] "with advertising that includes false, misleading or deceptive information, and material omissions." *Id.* at 956-957. For relief, the plaintiff sought, among other things, an "order requiring [defendant] 'to immediately cease such acts of unfair competition and enjoining [defendant] from continuing to conduct business via the unlawful, fraudulent or unfair business acts and practices … and from failing to fully disclose the true nature of its representations."[1] The Court held that "[i]n light of [plaintiff's] allegations and requests for relief, which [defendant] ignore[d], it disagreed with [defendant] that [plaintiff] failed to adequately specify" the actual nature of the injunctive relief plaintiff sought, or to explain how the public at large would benefit from that relief. *Id.*

Just as in *McGill*, Plaintiff's Complaint here alleges Citibank disseminates deceptive marketing to the general public regarding the price of its checking account and asks this Court to enjoin those misrepresentations to the benefit of all consumers—not just Citibank accountholders. (*See generally* Compl.) Just as in *McGill*, the Complaint's prayer for relief requests, *inter alia*: (1) the issuance of public injunctive relief, including to ensure compliance with the UCL; (2) entry of an order requiring Citibank to immediately cease the wrongful conduct as set forth in the Complaint; (3) an entry of an order of class-wide injunctive relief to ensure compliance with the UCL; and (4) a declaration that Citibank violated the UCL by charging more than $12/month for basic checking accounts. (*Id.* at p. 11.)  In sum, the facts of this case track closely with those in *McGill*. As such, the Court should have no trouble concluding that Plaintiff properly seeks "public injunctive relief" under the UCL.

---

[1] In *McGill*, plaintiff's complaint's prayer for relief requested among other things:" (1) a declaration that Citibank violated the UCL, the false advertising law, and the CLRA by 'disseminating … unfair, deceptive, or misleading advertising and material omissions'; 'injunctive relief to ensure compliance with this section pursuant to California Business & Professions Code sections 17200 *et seq*; entry of an order requiring Citibank 'to immediately cease the wrongful conduct as set forth above' and 'enjoining' Citibank 'from continuing to falsely advertise or conceal material information and conduct business via the unlawful and unfair business acts and practices complained of herein'; and (4) entry of a judgment for 'injunctive relief'." *Id.* at 957.

1   This conclusion also comports with common sense. When one of the largest banks in

2   California misleads consumers in *publicly available documents* regarding its account maintenance

3   fees, that deception harms the general public— including California consumers who may in the

4   future decide to bank with Citibank based on the deceptively low fees associated with Citibank

5   checking accounts. The free market depends on consumers being able to make rational choices

6   regarding to whom they would like to entrust their money. Citibank's marketing materials are

7   public documents available both in Citibank branches and online. Making sure Citibank's publicly

8   available account documents are free and clear of deception—so that consumers can choose their

9   banking institution without being misled about the fees they might incur—is to the benefit of all

10  consumers and indeed the operation of the market for banking services, not just Citibank

11  accountholders who have or could in the future incur improper fees. *See also McArdle*, 2017 WL

12  4354998 at *6 (granting Plaintiff's Motion for Reconsideration and vacating the arbitral award post-

13  *McGill* in a case premised on AT&T charging exorbitant international roaming fees *on AT&T*

14  *customers*).

15          **4.**     ***McGill* Is Not Preempted By The FAA**

16  Defendant argues that the *McGill* rule is preempted by the FAA. In support, Defendant

17  primarily relies on *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011), wherein the United States

18  Supreme Court reversed a California Supreme Court case that held that arbitration agreements that

19  contain class action waivers are unconscionable under California law, and concluding the rule

20  preempted by the Federal Arbitration Act. The Court held that "[r]equiring the availability of

21  classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a

22  scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344. The Supreme Court emphasized

23  that arbitration agreements must be enforced *unless* grounds exist for the "revocation of any

24  contract"—such as fraud, duress or unconscionability—under the savings clause of the FAA. *Id.* at

25  355. However, the Supreme Court also made clear that "when a doctrine … is alleged to have been

26  applied in a fashion that disfavors arbitration," a court must determine whether the state law rule

27  "stand[s] as an obstacle of the FAA's objectives," which are chiefly to "ensur[e] that private

28  arbitration agreements are enforced according to their terms. *Id.* at 334.

1    As the California Supreme Court observed in *McGill*, the FAA requires courts to "place

2   arbitration agreements on *equal footing* with other contracts [citations] and [to] enforce them

3   according to their terms." *McGill*, 2 Cal. 5th at 962 (quoting *Concepcion*, 563 U.S. at 339). And the

4   Court explained that the FAA's purpose was to ensure that arbitration agreements are "as

5   enforceable as other contract, *but not more so.*"  *Id.* (quoting *Prima Paint v. Flood & Conklin*, 338

6   U.S. 395, 404 n.12 (1967)).

7    Here, by arguing that a generally applicable contract defense, such as that in *McGill*[2]—does

8   not apply to its Arbitration Provision, Defendant suggests that its Arbitration Provision is more

9   enforceable than other contracts. As set forth in *McGill*, applying California law to invalidate a

10   waiver of the right to seek a public injunction does not undercut the FAA, but rather "*implements*

11   the FAA *as written*" because it gives effect to the FAA's savings clause. *McGill*, 2 Cal. 5th at 964

12   (italics in original).

13    *McGill* does not run afoul of the FAA's objectives because it neither disfavors arbitration,

14   nor interferes with the fundamental attributes of arbitration. The rule set forth in *McGill* provides

15   that parties *can* compel public injunctive claims to arbitration. In other words, it prohibits contracts

16   that waive public injunctive claims altogether. *McGill* does not violate the FAA's prohibition on

17   rules specifically disfavoring arbitration, and is therefore not preempted by the FAA.

18    In *Sakkab v. Luxxotica Retail N. Am, Inc.*, 803 F. 3d 425, 432-440 (9th Cir. 2015), the Ninth

19   Circuit evaluated FAA preemption and held that the FAA did not preempt a very similar California

20   Supreme Court rule called the *Iskanian* rule. The *Iskanian* rule declared that any waiver of an

21   individual's right to bring PAGA claims in any forum was unenforceable. *Id*. at 429; *Iskanian v.*

22   *CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014). The *Iskanian* Court's rationale was

23   based in part on the exact same California statute on which the *McGill* rule is based, Civil Code §

24   3513. *Sakkab*, 803 F.3d at 431; *Iskanian*, 59 Cal. 4th at 383. Like the UCL action here for public

25

26   _____

27   [2] The Court in *McGill* held that the FAA did not save the arbitration agreement because the contract
defense at issue—"a law established for a public reason cannot be contravened by a private
agreement" (as set forth in California Civil Code section 3515)—is a generally applicable contract

28   defense and therefore, is within the "savings clause" of section 2 of the FAA. *McGill*, 2 Cal 5th at
961-62.

1  injunctive relief, PAGA claims are brought by an individual civil plaintiff to benefit the public—in

2  that case, other employees; here, other consumers. The Ninth Circuit held that the FAA did not

3  preempt the *Iskanian* rule because *Iskanian* announced a rule that applied equally to arbitration and

4  non-arbitration agreements and did not conflict with the objectives of the FAA. *Sakkab*, 803 F.3d at

5  434–439. *Sakkab* is directly on point and requires this court to hold that the FAA does not pre-empt

6  the *McGill* rule because it too, like *Iskanian*, is a generally applicable contract defense that does not

7  conflict with the objectives of the FAA. *Id.* at 433.

8         For this reason, courts in this Circuit routinely reject the argument that *McGill* is preempted

9  by the FAA. *See Roberts v. AT&T Mobility LLC,* No. 15-CV-03418-EMC, 2018 WL 1317346, at *6

10  (N.D. Cal. Mar. 14, 2018) ("If the California state law rule (*Iskanian*) prohibiting waiver of

11  representative PAGA claims (in any forum) does not interfere with the fundamental attributes of

12  arbitration, then it is difficult to see how the California state law rule (*McGill*) prohibiting waiver of

13  public injunctive relief (in any forum) could"); *see also McArdle*, 2017 WL 4354998, at *3

14  (applying *Sakkab* and concluding *McGill* was not preempted); *Blair,* 2017 WL 4805577, at *5

15  ("*McGill* does not violate the FAA's prohibition on rules specifically disfavoring arbitration, and is

16  therefore not preempted by the FAA"). This Court should do the same.[3]

17         **B.    Plaintiff Has Article III Standing To Pursue A UCL Claim**

18         The California legislature has enacted various consumer protection laws, such as the UCL,

19  to "protect consumers against unfair and deceptive business practices and to provide efficient and

20  economical procedures to secure such protection." Cal. Civ. Code § 1760. The UCL addresses

21  'unfair competition,' which includes any unlawful, unfair, or fraudulent business act or practice and

22

23  [3] Citibank cites *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013), for the
   proposition that *McGill* was wrongly decided to the extent it relied on the "effective vindication"

24  exception articulated in *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). But
   *McGill's* central holding was merely that Civil Code § 3513 is a generally applicable contract

25  defense, which therefore falls under the FAA's saving clause. That holding does not rise or fall on
   its citation to *Italian Colors*. Indeed, in holding the *Iskanian* rule was not preempted under the FAA,

26  the Ninth Circuit did not discuss the "effective vindication" exception—nor did it need to. *Iskanian*
   and *McGill* are not preempted because they are generally applicable contract defenses. *See*

27  *generally Sakkab*, 803 F.3d at 437; *see also Roberts*, 2018 WL 1317346 (holding *McGill* was not
   preempted); *McArdle,* 2017 WL 4354998 (same).

28

1  unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising

2  law]." Bus. & Prof. Code § 17200. It is also well-established that action for relief under the UCL

3  may be brought "by a person who has suffered injury in fact and has lost money or property as a

4  result of the unfair competition." *McGill*, 2 Cal 5th, at 954 (citing Bus. & Prof. Code § 17204). The

5  UCL provides, in pertinent part:

> "Any person who engages, has engaged, or proposes to engage in unfair competition may be
> enjoined in any court of competent jurisdiction. The court may make such orders or
> judgments … as may be necessary to prevent the use or employment by any person of any
> practice which constitutes unfair competition, as defined in this chapter, or as may be
> necessary to restore to any person in interest any money or property, real or personal, which
> may have been acquired by means of such unfair competition."

10  Bus. & Prof. Code § 17203.

11      Here, Plaintiff alleges that she signed up for a checking account at Citibank based on a

12  verbal explanation that the checking account would cost no more than $12/month, and after being

13  provided a fee schedule that said the same thing. (Compl. ¶ 31.) Plaintiff alleges that she incurred

14  $46 for a month of checking account services, after Defendant assessed a $34 overdraft fee when

15  she did not have sufficient funds to cover the $12/month charge. In short, as a direct result of

16  Defendant's deceptive practice, Plaintiff alleges she lost money in the amount of $46. As such,

17  Plaintiff may assert claims under the UCL. *See McGill*, 2 Cal. 5th at 959 ("if [an] individual was

18  actually injured by, and suffered financial/property loss because of an unfair business practice," he

19  or she could "sue" for "private enforcement of [the] unfair business competition laws.')

20      Defendant argues that Plaintiff's UCL claim must nevertheless fail, based on its inaccurate

21  contention that Plaintiff lacks Article III standing to seek injunctive relief in federal court. First,

22  Defendant argues that Plaintiff cannot show "actual and imminent threat of injury" because, in its

23  view, "Plaintiff nowhere alleges any risk of future harm." (Def.'s Mot." at 10.) Defendant further

24  argues that there is "no possible risk that Plaintiff will be charged overdraft fees on her account in

25  the future" because her account has been closed. (*Id.*) Defendant's arguments fail.

26      As Defendant recognizes, "[a] plaintiff must demonstrate constitutional standing separately

27  for each form of relief requested." *Friends of the Earth, Inc. v. Laidlaw Envt. (TOC) Inc.*, 528 U.S.

28  167 (2000). "For injunctive relief, which is a prospective remedy, the threat of injury must be

1   'actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly Clark*, 889 F.3d 956,

2   967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "In other

3   words, the threat of injury must be certainly impending to constitute injury in fact," and "allegations

4   of *possible* future injury are not sufficient." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S.

5   398, 409 (2103) (internal quotation marks and alteration omitted)). It is important to note, however,

6   that "[p]ast wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on

7   whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v.*

8   *Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted)).

9          In *Davidson*, the Ninth Circuit held that "a previously deceived consumer may have

10   standing to seek an injunction against false advertising or labeling … because the consumer may

11   suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm," even when

12   the consumer does not plan on purchasing the product in the future. 889 F.3d at 969. In that case,

13   plaintiff alleged that she paid a premium for wipes manufactured and advertised by defendant as

14   "flushable," when, in fact, they were not. The Ninth Circuit found that the plaintiff "properly

15   alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-

16   Clark's labels in the future, and that this harm is sufficient to confer standing to seek injunctive

17   relief." *Id.* at 967. The Ninth Circuit observed that its holding "alleviates the anomalies the opposite

18   conclusion," which would effectively gut the UCL and CLRA by allowing defendants to defeat

19   claims for injunctive relief by removing cases from state court and then moving to dismiss for

20   failure to meet Article III's standing requirements. *Id.* at 970. The Ninth Circuit concluded that

21   "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that

22   it will remain false in the future." *Id.* at 969.

23          Here, following the court's reasoning in *Davidson*, Plaintiff's allegations that she was

24   deceived by Defendant's express representations that checking accounts would cost no more than

25   $12/month, and which ultimately resulted in a $46 charge, are enough for purposes of Article III

26   standing. That Plaintiff has already closed her account with Citibank is not dispositive. Because

27   Plaintiff here may be unable to rely on Defendant's representations in the future, Plaintiff faces an

28   actual and imminent threat of future injury for purposes of Article III standing. *See Id.* 969-70

1    (finding actual and imminent threat of injury where the plaintiff may be unable to rely on

2    defendant's representations in the future, or because the plaintiff may again purchase the mislabeled

3    product).

4          Finally, this Court's standing analysis should not affect its finding that Citibank's arbitration

5    provision is unenforceable under *McGill*. In *Roberts*, the court evaluated a similar argument from

6    the defendant and concluded that whether the plaintiffs have standing to proceed on a claim for

7    public injunctive relief does not change whether the arbitration provision is void under *McGill*:

8          [W]hether [the plaintiffs] have standing to proceed on a claim for injunctive relief
9          (public or otherwise) is an issue separate and distinct from the enforceability of
           the arbitration agreement. AT&T does not dispute that the [Plaintiffs'] customer
10         agreement contained the problematic provision above barring public injunctive
           relief in any forum (arbitration or otherwise). That renders the arbitration
11         agreement in its entirety—per the poison pill—a nullity. AT&T may still argue to
           this Court that the [Plaintiffs] lack standing to pursue any claim for injunctive
12         relief, but that does not change the fact that the forum for this standing argument
           is a judicial forum rather than an arbitral one.
13

14   2018 WL 1317346, at *9 (N.D. Cal. Mar. 14, 2018).

15         Like in *Roberts*, this Court should hold that Plaintiff's standing to seek injunctive relief is

16   ancillary to the question of whether Citibank's arbitration provision is enforceable under *McGill*.

17         **C.    Plaintiff's UCL Claims For Injunctive Relief Are Not Preempted**

18         Citibank argues Plaintiff's claims are preempted by the National Bank Act ("NBA") and

19   OCC regulations thereunder. Citibank is wrong. Contrary to Defendant's assertions, the NBA "does

20   not 'preempt the field' of banking." *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555

21   (9th Cir. 2010). Instead, "[f]ederally chartered banks are subject to state laws of general application

22   in their daily business to the extent such laws do not conflict with the letter or the general purposes

23   of the [NBA]." *Id.* (quoting *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13 (2007) (citations

24   omitted)).

25         Cases considering whether the NBA preempts unfair competition law claims "have tended

26   to distinguish between those claims that arise from generally-applicable duties such as … the duty

27   to refrain from deceptive acts and those that rest on alleged violations of statutes specifically aimed

28   at NBA duties." *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1084 (C.D. Cal. 2009). In

*Davis*, the plaintiff brought an action against a national bank, alleging violations of California state law arising from the bank's servicing of a credit card. Among other things, the plaintiff alleged that defendant engaged in unfair, fraudulent, and deceptive practices under the UCL when it advertised promotional items as interest-and-payment free when purchased with defendant's credit card, when in fact interest and finance charges were frequently applied. The defendant focused on the false advertising claim, arguing that such claim is preempted because it falls into 12 C.F.R. § 7.4008(d)(2)(viii), which provides that a national bank "may make non-real estate loans without regard to state law limitations concerning … (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content…" *Id.* at 1084-85. The court found that the language did "not expressly preempt generally-applicable laws regarding deceptive advertising," because, as the court explained, it instead appears to be "aimed at *specific* types of disclosures, rather than general 'false advertising' laws." *Id.* at 1085. Thus, the court concluded that, to the extent plaintiff was alleging that defendant's allocation violates the UCL because it was contrary to advertisements, those claims were not preempted. *Id.* at 1086.

In its motion, Defendant argues that disclosures related to overdraft fees are governed by federal law under § 24 (Seventh) and 12 C.F.R. § 7.4007(a), and that "Plaintiff's attempt to impose an affirmative disclosure requirement under California law is preempted because such a disclosure requirement would necessarily 'prevent or significantly interfere with' Citibank's deposit-taking powers as a national bank." (Def.'s Mot. at 19.) Defendant's arguments are unfounded and are entirely unavailing.

Here, Plaintiff asserts that Defendant expressly represented, both in-person and online, that Defendant would not charge more than $12/month for Citibank checking accounts. (Compl. ¶ 23.) Plaintiff asserts only that Defendant made false representations that it would not charge more than $12/month for checking account services, in violation of the UCL. In seeking relief that would have the effect of requiring Defendant to *refrain* from making those false representations, Plaintiff is not "attempting to impose" a disclosure requirement under California law. As the district court held in *Jefferson v. Chase Home Fin.*, No. 06-6510 TEH, 2008 WL 1883484, at *10 (N.D. Cal. Apr. 29, 2008), "such laws of general application, which merely require all businesses (including banks) to

1  refrain from misrepresentations … to customers do not impair a bank's ability to exercise" its

2  powers under the NBA.

3         Defendant's reliance upon *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir.

4  2012), *Robinson v. Bank of Am., N.A.*, 525 F. App'x 580 (9th Cir. 2013), and *Montgomery v. Bank*

5  *of Am. Corp.*, 515 F.Supp.2d 1106 (C.D. Cal. 2007) are therefore misplaced. In *Gutierrez*, the Ninth

6  Circuit held that claims seeking to *mandate* disclosure requirements were preempted. 704 F.3d at

7  726. Here, as explained above, Plaintiff is not attempting to impose mandatory disclosure

8  requirements under the UCL. In *Robinson*, the Ninth Circuit found that, although the plaintiff's

9  claims were theoretically based on laws of general applicability, they "do not rest upon any

10  affirmative misrepresentation by [defendant]." 525 F.App'x at 582.  Here, in contrast, Plaintiff's

11  claims are based on Defendant's express representations in violation of the UCL. And, in

12  *Montgomery*, the court dismissed plaintiff's state law claims "based on the amount of and means of

13  disclosure of [Overdraft Fees] assessed by defendants on the ground that 12 C.F.R. § 7.4002

14  preempted those claims." 515 F. Supp.2d at 1114. Although the *Montgomery* court concluded that

15  dismissal was proper, it did not explain which allegations were at issue other than to state that "[t]he

16  gravamen of plaintiff's complaint is that [defendant] failed to disclose adequately the Nonsufficient

17  Funds/Overdraft Fees policy." *Id.* at 1108. Here, Plaintiff is not challenging Defendant's *assessment*

18  of charges for checking account services in and of itself—she is merely challenging the deceptive

19  misrepresentations relating to the price those services. As such, Defendant's reliance on

20  *Montgomery* is also misplaced.[4]

21         Several district courts have similarly held that the NBA does *not* preempt a claim of express

22  deception under state law. For example, in *Mann v. TD Bank, N.A.*, No. 09-1062 RBK/AM, 2009

23  WL 3818128, at *8 (D.N.J. Nov. 12, 2009), the court denied defendant's motion to dismiss with

24  _____

25  [4] Defendant also relies on *Rose v. Chase Bank USA, N.A.,* 513 F.3d 1032, 1036 (9th Cir. 2008),
   wherein the Ninth Circuit held that California Civil Code section 1748.9 was preempted by federal

26  law applicable to national banks. *Rose* is not controlling here. In *Rose*, the court was tasked to
   address the preemptive force of national banks' authority to engage in lending. In the area of

27  lending, the OCC has interpreted the NBA as manifesting a broad preemptive force. *See Mann*,
   2009 WL 3818128, at *6 (D.N.J. Nov. 12, 2009).

28

1  respect to the plaintiff's claims challenging defendant's alleged deceptive advertising and

2  marketing. The court held that a claim brought under the New Jersey Consumer Fraud Act based on

3  a bank's advertising of "free" and "no fee" gift cards was deceptive, misleading, and unlawful

4  because it failed to disclose the existence of dormancy and replacement fees was not preempted by

5  the NBA. *Id.* The court explained that the state law at issue in that case did "not prohibit … a

6  discreet banking activity." *Id.* at *5. Instead, the state law at issue merely prohibited defendants

7  from conducting a discreet banking activity "in a certain manner," and the "manner of prohibited

8  conduct [was] not aimed at or specific to the banking industry." *Id.* In other words, "the law simply

9  require[d] all actors to conform to a generally applicable code of conduct." *Id.* In finding no

10  preemption, the court noted that, plaintiffs sought "to apply a generally applicable state law against

11  national banks in an area where neither Congress nor OCC ha[d] expressly provided for

12  preemption…" *Id.* at *7; *See also White v. Wachovia Bank, N.A.*, 563 F.Supp.2d 1358 (N.D. Ga.

13  2008) (holding that a claim under the Georgia Fair Business Practices Act that a bank engaged in

14  unfair or deceptive practice by manipulating the posting of transactions to an account in order to

15  impose overdraft fees was not preempted).

16      Moreover, California courts have long held that consumer protection laws are not preempted

17  by federal banking laws. *See e.g., Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018) (UCL

18  claims predicated on violations of California's Escrow Interest Law were not preempted by the

19  NBA); *Reyes v. Premier Home Funding, Inc.*, 640 F. Supp. 2d 1147, 1155-56 (N.D. Cal. 2009)

20  (UCL claims predicated on violations of the California Translation Act were not barred by the

21  federal Homeowners' Loan Act of 1933); *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463,

22  1484 (2005) (UCL claim challenging notice of change in checking account overdraft fees was not

23  barred by preemption under the Truth in Savings Act and corresponding OCC regulations); *Gibson*

24  *v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291, 1294 (2002) (UCL claim challenging federal

25  savings association's practice of passing through to its borrowers' premiums for forced order

26  insurance was not subject to OTS preemption); *Black v. Fin Freedom Senior Funding Corp.*, 92

27  Cal. App. 4th 917, 936-38 (2001) (UCL claim challenging marketing of reverse mortgage

28  transactions was not barred by preemption under numerous federal banking laws); *Wash. Mut.*

1  *Bank, FA v. Super. Ct. (Brown)*, 75 Cal. App. 4th 773, 787 (1999) (UCL action was not preempted

2  by RESPA); *People ex rel. Sepulveda v. Highland Fed. Sav &* Loan, 14 Cal. App. 4th 1692, 1708

3  (1993) (12 C.F.R. § 545.2, promulgated under HOLA, did not preempt the UCL); *Gutierrez*, 704

4  F.3d at 723-23 (9th Cir. 2012) (claims for misleading misrepresentations under UCL fraudulent

5  prong not preempted by NBA). In sum, Plaintiff's UCL claim is not preempted.

6    **D.**  <u>**There Is No Basis To Stay This Case Because It Is Properly Before The Court**</u>

7    For the reasons explained above, all of the claims for relief asserted in Plaintiff's Complaint

8  are properly brought in court. As such, there is nothing to be referred to arbitration.

9  **IV.**  <u>**CONCLUSION**</u>

10

11    There is no basis to compel arbitration for any of the claims for relief asserted in this action.

  Therefore, Plaintiff respectfully requests that Defendant's motion be denied in its entirety.

12

13  Dated:  August 21, 2018         Respectfully submitted,

14               <u>/s/ Robert R. Ahdoot</u>
             Robert R. Ahdoot (CSB 172098)

15               *rahdoot@ahdootwolfson.com*
             Tina Wolfson (CSB 174806)

16               *twolfson@ahdootwolfson.com*
             Theodore W. Maya (CSB 223242)

17               *tmaya@ahdootwolfson.com*
             AHDOOT & WOLFSON, PC

18               10728 Lindbrook Drive

19               Los Angeles, California 90024
             Phn: (310) 474-9111; Fax: (310) 474-8585

20

21               Jeffrey D. Kaliel (CSB 238293)

22               *jkaliel@kalielpllc.com*
             Sophia Gold (CSB 307971)

23               *sgold@kalielpllc.com*
             KALIEL PLLC

24               1875 Connecticut Ave., NW, 10th Floor

25               Washington, D.C.  20009
             (202) 450-4783

26

27               *Attorneys for Plaintiff and the Putative Class*

28